LOBRANO, Judge.
This appeal arises out of a subrogation suit brought by appellee, Audubon Insurance Company (hereinafter Audubon), against appellants, Allstate Insurance Company and Edward Farr (hereinafter Allstate and Farr), for reimbursement of $4,412.00 paid by Audubon to its insured, Donna M. Paul (hereinafter Paul) for damages to her dwelling which were caused by the negligence of Allstate’s insured, Farr. Allstate subsequently filed a third party demand against Audubon’s insured, Paul, for return of the $4,000.00 paid to her by Allstate allegedly for the same damages. The trial court ruled in favor of Audubon as subrogee of Paul for the full amount it paid to its insured, and granted Allstate and its insured, Farr, a third party judgment against Paul for the $4,000.00 paid by them. Allstate perfects this appeal as to the judgment obtained by Audubon.
The following facts were stipulated prior to trial, and are not in dispute.
On June 2, 1978, a 1965 Ford 2-door automobile, owned and operated by Edward Farr struck the dwelling owned by Donna M. Paul bearing Municipal Nos. 600-602 Louisa Street, New Orleans, La. This was a hit-and-run accident. Farr’s negligence was the sole and proximate cause of the accident. Audubon Insurance Company was the homeowner insurer of Paul, insuring her home against this type loss in excess of a $100.00 deductible. Allstate Insurance Company was the automobile liability insurer of Farr.
Audubon and Paul agreed that the total amount of the loss was $4,512.00. On July 5, 1978, Audubon issued to Paul its settlement draft in the amount of $4,412.00 (the loss minus the $100.00 deductible). Pursuant to the contract of insurance between Audubon and Paul, a subrogation receipt in the amount of $4,412.00 was executed by Paul in consideration of said payment. On August 18, 1978 that draft was paid by the bank.
During this same period of time, Paul was negotiating a settlement with Allstate and Farr whose identity at that time was unknown by Audubon. On July 20, 1978, Allstate issued to Paul its settlement cheek in the amount of $4,000.00 with the notation, “IN PAYMENT OF PROPERTY damage of 6-1-78”. The draft contained-no release language thereon, and Allstate did not procure from Paul a release of any kind in connection with its aforesaid payment of $4,000.00. Allstate’s draft was paid by the bank on August 21, 1978.
Upon receipt of the police accident report on August 16, 1978 Audubon became aware of the name of the tortfeasor, Farr. On October 3, 1978 Audubon filed an SR-10 form with the Department of Financial Responsibility in an attempt to learn the name of Farr’s insurer, if any. On March 3, 1979, the Louisiana Department of Public Safety sent a letter to Audubon indicating liability coverage on Farr with Allstate. On March 16, 1979 Audubon sent Farr a notice of subrogation which he in turn forwarded to Allstate. They received said notice on March 23, 1979. As a result of a telephone conversation with Farr, Audubon sent to Allstate on March 29, 1979 a copy of its subrogation receipt and proof of loss which Allstate received on April 5, 1979. In response thereto, Allstate informed Audubon of its $4,000.00 payment to Paul and forwarded a copy of the draft.
*735 Allstate refused to reimburse Audubon asserting that its payment to Paul extinguished the debt owed to Audubon, thus resulting in this litigation.
The issues raised by Allstate in this Court are as follows:
.1. The trial court erred in finding that the obligation of Edward Farr and Allstate Insurance Company to Donna M. Paul had not been extinguished with payment to her.
2. Alternatively, whether Edward Farr and Allstate Insurance Company should not have been given a credit for their payment to Donna M. Paul.
After a careful review of the record we find that the judgment of the trial court is correct.
Audubon’s policy of insurance to Donna M. Paul contained the following subrogation clause:
“Subrogation. This company may require from the insured an assignment of all rights of recovery against any party for the loss to the extent of that payment therefor is made by this company.”
The jurisprudence is well settled that where a subrogation clause is included in an insurance contract, subrogation takes place automatically at the time of payment as an incident to it. Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981); Cox v. W.M. Heroman and Co. Inc., 298 So.2d 848 (La.1974); State Farm Fire and Casualty Co. v. Sentry Indemnity Co., 346 So.2d 1331 (La.App. 3rd Cir.1977); Continental Casualty Company v. Canadian Universal Co., 605 F.2d 1340 (5th Cir., 1979); Union Indemnity Company v. Crow, 14 La.App. 197, 127 So. 35 (1930); Cooper v. Jennings Refining Co., 118 La. 181, 42 So. 766 (1907). Where subrogation clauses are included in insurance contracts, upon payment by the carrier to its insured, “the subrogee is substituted and figuratively placed in the shoes of subrogor.” American Auto Ins. Co. v. Twenty Grand Towing Co., 225 So.2d 114 (La.App. 1st Cir.1969); La.C.C. Arts. 2160 and 2161.
Upon Audubon’s payment to Paul, the debt of the tortfeasor and his insurer was divided between Audubon and Paul, causing them to become either several or joint obligees, and that any subsequent action by Paul in exercising her right to collect her part of any credit due her had no prejudicial effect upon Audubon’s rights. Southern Farm Bureau Casualty Ins. Co. v. Sonnier, 406 So.2d 178 (La.1981). More specifically, Paul did not lose or give up her right to proceed against Farr and Allstate for any amounts she felt may be due simply because she settled with her own insurer. Thus the payment by Audubon to Paul created a subrogation right in Audubon’s favor against Allstate and Farr up to the amount so paid.
Allstate asserts the defenses of extin-guishment of the obligation or remission of the debt, either in whole or in part, upon its payment of the $4,000.00 to Paul. In support of these arguments, Allstate cites the cases of Voss v. Mike and Tony’s Steakhouse, 230 So.2d 470 (La.App. 1st Cir.1969) and Pennsylvania Fire Ins. Co. v. Harrison, 94 So.2d 92 (La.App. 1st Cir.1957).
In Voss, the defendants settled with the plaintiff knowing full well that the plaintiff had already collected from his collision insurer. In fact, the collision insurer had intervened in the suit by plaintiff against the defendant. Upon payment by defendants they obtained a full release from plaintiff for all responsibility including any responsibility they might have to plaintiff’s collision insurer. The collision insurer then successfully proceeded against plaintiff claiming he, in effect, had been paid twice. These facts are quite different from the instant case; most notably where Allstate, the defendant, failed to get any release whatsoever, and where Audubon, the insurer is proceeding directly against the tort-feasor, and not its own insured.
In Pennsylvania Fire Insurance Company, the tort-feasor also settled with the insured knowing that he had already collected under the collision portion of his policy. The tort-feasor’s payment was for an amount in excess of the collision insur *736 er’s payment because the insured felt he was not fully compensated for his damages. The Court held that since the damages were stipulated by the insured to be the same amount as paid by his insurer, the tortfeasor should be given a credit for the excess amount paid by him. We disagree with the reasoning of that case, since it is inconsistent with the principles set out by our own circuit in American Bankers Insurance Company of Florida v. Costa, 107 So.2d 76 (La.App. Orleans 1958), discussed below.
We are convinced that an insured cannot release a tortfeasor from liability arising in favor of its insurer. American Bankers Insurance Company of Florida v. Costa, supra. In the instant case that principle of law is especially applicable since Audubon’s subrogation rights vested prior to any payment by Allstate and where Audubon at the time it issued the draft, had no knowledge of the tortfeasor or his insurer. To hold otherwise would allow subsequent conduct on the part of the insured to undermine the contractual and legal rights of the insurer.
Furthermore, we reject Allstate’s claim that Audubon was in a better position to have prevented this situation and therefore equity requires that Audubon should bear the loss. Inasmuch as Farr was a hit-and-run driver, Audubon did not know the identity of the tortfeasor at the time of the accident or if he was insured. Despite this lack of knowledge, Audubon settled its obligation with its insured in a very expeditious manner, which it was legally required to do. They cannot, now, be penalized for living up to their contractual obligations. This Court is well aware of the fact that it is the tortfeasor and his liability carrier, not an innocent party, who should bear the loss inasmuch as it is the act of the tort-feasor which caused the damages. LSA C.C. Art. 2315.
For the foregoing reasons the judgment of the trial court is affirmed. All costs to be paid by appellant.
AFFIRMED.